# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAPITAL DEVELOPMENT AFFILIATES LLC, | )<br>)<br>) |
|     Plaintiff and Counterclaim Defendant, | )<br>) |
| v. | )    Case No. 17-CV-0426-CVE-FHM |
| ZELAND BENJAMIN THIGPEN, III, | )<br>) |
|     Defendant and Counterclaim Plaintiff, | )<br>) |
| and | )<br>) |
| ZELAND BENJAMIN THIGPEN, III, | )<br>) |
|     Third Party Plaintiff, | )<br>) |
| v. | )<br>) |
| ICD METALS, LLC, | )<br>) |
|     Third Party Defendant. | ) |

## OPINION AND ORDER

This is an action to enforce a guaranty. Before the Court are plaintiff Capital Development Affiliates, LLC's, motions to dismiss defendant Zeland Benjamin Thigpen III's counterclaims (Dkt. # 11) and to strike his third party complaint (Dkt. # 12), and defendant's motion to defer defendant's response to plaintiff's motion for summary judgment (Dkt. # 22).

### I. Background

Plaintiff is a limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 150 East 52nd Street, New York, New York. Defendant is a resident of the State of Oklahoma and resides at 8211 South Delaware Place,

Tulsa, Oklahoma. Dkt. # 1, at 2. Defendant and his wife, Cheryl Thigpen, were the sole members of Julimar Trading, LLC (Julimar), a now defunct company that conducted business "in the international purchase and sale of industrial metallic alloys." Id.; Dkt. # 7, at 4.

On June 26, 2015, Julimar executed a security agreement wherein it granted a third party, ICD Metals, LLC (Metals LLC), a security interest in Julimar's right, title, and interest to certain collateral. Dkt. # 1-1.

On September 30, 2015, Julimar executed a demand note (the note) wherein it agreed to pay Metals LLC, on demand, a principal sum of $2,933,356. Dkt. # 1-2, at 1. Additionally, pursuant to the note, Julimar agreed to (1) pay interest on the outstanding principal balance at a rate of 12% per annum, calculated on the basis of a 360 day year and twelve months of 30 days; (2) make payments on the first day of each month commencing October 1, 2015 and pay a late payment charge of 5% of any interest or required principal payment made more than ten days after the due date thereof; (3) upon the stated or accelerated maturity of the note, pay interest at a per annum rate of 5% in excess of the normal interest rate; and (4) should the indebtedness be collected at law, pay all costs of collection, including reasonable attorney fees. Id.

Also on September 30, 2015, as additional security for Julimar's obligations under the note, defendant executed a guaranty, wherein he guaranteed the punctual and full payment of all present and future indebtedness of Julimar to Metals LLC. Dkt. # 1-3. The guaranty contained the following provision,

> **Nature of Guaranty**. This Guaranty is an absolute, unconditional, continuing, direct and immediate guaranty of payment and not just of collection and is no way conditioned upon or limited by or in any other way affected by . . . any defense asserted or claimed by Borrower with respect to Borrower's Obligation . . . . The obligations of Guarantor under this Guaranty shall not be subject to any counterclaim

> . . . setoff . . . or defense based upon any claim that Guarantor may have against Borrower or Lender . . . .

Id. at 3. In addition, the guaranty stated that it, "shall be governed by, construed and interpreted in accordance with the laws of the State of New York." Id. at 11. On February 12, 2016, defendant and Cheryl Thigpen executed an amended guaranty; it contained the same provisions as the original but added Cheryl Thigpen as a guarantor. Dkt. # 29-5.

On April 1, 2016, Metals LLC assigned the note, security agreement, and amended guaranty to plaintiff. Dkt. # 1-4. In a May 3, 2016 letter to Julimar, plaintiff declared the unpaid principal, interest, default interest, late charges, and other amounts specified in the documents to be immediately due and payable. Dkt. # 1-5. Plaintiff demanded payment no later than May 13, 2016. Id. On May 20, 2016, plaintiff sent a second letter to Julimar, advising Julimar that it failed to make payment of the required amounts by May 13, 2016 and that plaintiff reserved all rights arising from Julimar's default. Id. As a consequence of Julimar's default, according to plaintiff, there is now due and owing to plaintiff $2,933,356, together with interest at the rate of 12% per annum from the 1st day of September 2016, and additional sums for late payment charges, attorney fees, costs, and expenses. Dkt. # 1, at 5.

On November 18, 2016, Julimar, defendant, and Cheryl Thigpen filed Chapter 7 Bankruptcies in the United States Bankruptcy Court for the Northern District of Oklahoma. Dkt. # 16-4, at 5. Defendant's bankruptcy discharge, however, was waived pursuant to an order entered on May 11, 2017. Dkt. # 16-6.

On July 20, 2017, plaintiff filed this action, alleging that, because the note remains in default, defendant has breached the amended guaranty. Dkt. # 1, at 6. Plaintiff seeks a judgment in its favor in the principal amount of $2,933,356, together with interest at the rate of 12% per annum from the

1st day of September, 2016, along with additional sums for late payment charges, attorney fees, costs, and expenses. Id. at 6-7.

In response to plaintiff's complaint, defendant filed an answer (Dkt. # 7), a counterclaim (Dkt. # 8), and a third party complaint (Dkt. # 9) against Metals LLC. In defendant's counterclaim, he states, "Defendant and Metals LLC entered into a joint venture . . . to conduct business in the international purchase and sale of industrial metallic alloys . . . ." Dkt. # 8, at 4. Defendant does not, however, submit documentation supporting this statement, and the joint venture agreement that plaintiff submits states that the joint venture was between Julimar (i.e. not defendant) and Metals LLC. Dkt. #11-7. In addition, in his counterclaim defendant alleges the following,

> In December 2014, Metals LLC entered into several transactions . . . that were [not] approved by Defendant.
>
> Metals LLC incurred substantial losses as a result of the Unapproved Transactions of more than $2,000,000.
>
> Metals LLC then allocated losses from the Unapproved Transactions to the Joint Venture, and claimed all of Defendant's share of profits gained from Approved Transactions as an offset.
>
> When Defendant objected, Metals LLC replied that unless Defendant acceded to the allocation of the losses from the Unapproved Transactions, it would deny Defendant any access to capital needed to finance further transactions, but if Defendant agreed to the reallocation of losses, financing would continue.
>
> Defendant signed the promissory note and guaranty in reliance on promises by Metals LLC that it would provide financing for further transactions by the Joint Venture.
>
> However . . . within 90 days after Defendant executed the promissory note, Metals LLC ceased providing any further capital . . . .
>
> Both parties knew that Defendant had no means to pay the promissory note other than by the continued operation of the Joint Venture.
> Metals LLC also seized all Defendant's share of profits from Approved Transactions.

4

> Consequently, Defendant was unable to continue to pay his obligations to his other creditors.
>
> Defendant then filed the Petition in Bankruptcy referenced in the Complaint.
>
> Defendant has since resumed conducting business through a new post-bankruptcy entity . . . .
>
> Upon discovering Defendant's resumption of business, Metals LLC has attempted to destroy Defendant's new business as a means of extorting payment of the promissory note.
>
> Filing this suit is a part of that campaign.
>
> Metals LLC has also maliciously caused the publication of false and libelous statements on the internet and in trade publications all with the purpose of forcing Defendant to pay the promissory note.

Id. at 4-5.

Based on the above allegations, defendant brings counterclaims for (1) a declaratory judgment stating that the note is "unsupported by valid consideration and is unenforceable," because "[a]ll of plaintiff's claims against Defendant derive entirely from false claims against defendant by Metals LLC;" (2) an accounting, as "defendant has the right to receive an accounting of his share of the profits earned by the Joint Venture;" and (3) libel, alleging that "Plaintiff and Metals LLC have maliciously caused false statements to be published in print publication and on the internet about Defendant." Id. at 7. In addition to his counterclaim, plaintiff brings a "third party petition" [sic] (Dkt. # 9) against Metals LLC, wherein he alleges the same facts and brings the same claims as he does in his counterclaim against plaintiff.

On October 17, 2017, plaintiff filed an amended motion for summary judgment (Dkt. # 16). On October 19, 2017, defendant filed a motion to consolidate (Dkt. #17) this case with a separate, ongoing lawsuit between Julimar and Metals LLC. On October 27, 2017, defendant filed a motion

to defer his response to plaintiff's motion for summary judgment (Dkt. # 22). Without ruling on defendant's motion to defer, on October 30, 2017, the Court ordered (Dkt. # 23) that plaintiff's amended motion for summary judgment would be held in abeyance until the Court ruled on defendant's motion to consolidate, which the Court denied on November 15, 2017. Dkt. # 28.

## II. Plaintiff's Motion to Dismiss Defendant's Counterclaim

### i.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

**ii.**

Plaintiff's primary argument is that defendant's counterclaim should be dismissed because he lacks standing to bring it, as the counterclaims he asserts are not personal claims of defendant but claims of Julimar, which belong to Julimar's bankruptcy estate, and the bankruptcy trustee has not abandoned them. Dkt. # 11, at 3-4.[1] Defendant does not deny that the counterclaims he asserts are currently property of the Julimar bankruptcy estate. Rather, he states,

> The Thigpen Bankruptcy Trustee is currently evaluating whether to abandon or retain Mr. Thigpen's . . . claims against Metals LLC and Plaintiff. If the trustee abandons the counterclaims . . . Mr. Thigpen will have standing to assert his counterclaims against plaintiff. If, on the other hand, the Thigpen Bankruptcy Trustee chooses to retain the claims . . . [t]he trustee will have standing.

Dkt. # 19, at 8.

A plaintiff who is not a real party in interest lacks standing. RMA Ventures Cal v. SunAmerica Life Ins. Co., 576 F.3d 1070, 1073 (10th Cir. 2009). When an individual or organization files for bankruptcy, all interests of the debtor become property of the bankruptcy estate, including causes of action. See 11 U.S.C. § 541(a)(1); In re Hedged-Investments Assocs., Inc., 84 F.3d 1281, 1285 (10th Cir. 1996). The trustee of the bankruptcy estate has the sole capacity to sue and be sued over assets of the estate. See 11 U.S.C. § 323(b); Mauerhan v. Wagner Corp., 649 F.3d 1180, 1184 n.3 (10th Cir. 2011).

Defendant admits that he will have standing to assert his counterclaims "<u>if</u> the trustee abandons" them. Dkt. # 19, at 8 (emphasis added). Nothing in the record indicates that the

---

[1] In addition, plaintiff argues (1) that defendant's counterclaim should be dismissed because he asserts it against Metals LLC, a non-party; (2) defendant is judicially estopped from claiming an offset; and (3) defendant fails to state a claim for libel, declaratory judgment, and an accounting. Id. at 4-9. Because the Court decides plaintiff's motion to dismiss on the basis of standing, it does not reach plaintiff's alternative arguments.

7

bankruptcy trustee has abandoned the counterclaims defendant asserts against plaintiff. Therefore, and quite simply, defendant lacks standing to bring them.[2]

Accordingly, plaintiff's motion to dismiss defendant's counterclaim (Dkt. # 11) is granted.[3]

### III. Plaintiff's Motion to Strike Defendant's Third Party Complaint

As it argued with respect to defendant's counterclaim, plaintiff argues that the Court must strike defendant's third party complaint because defendant lacks standing to bring it. Dkt. # 12, at 4-5. The Court agrees with plaintiff—the factual allegations and claims in defendant's third party

---

[2] Moreover, even if defendant had standing to bring the counterclaims he asserts, the amended guaranty states plainly that it was an "unconditional . . . guaranty of payment" and that the "obligations of Guarantor . . . shall not be subject to any counterclaim . . . setoff . . . or defense." Dkt. # 1-3, at 3. And, as the New York Court of Appeals recently reaffirmed, ". . . guaranties that are 'absolute and unconditional' have been consistently upheld by New York courts," Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navaro, 25 N.Y. 3d 485, 493 (2015) (collecting cases), "even [with respect to] claims of fraudulent inducement," and especially where the guarantor, as here, is "not unfamiliar with the world of commercial dealing." Id. at 493, 497. Thus, even if defendant had standing to bring the counterclaims he asserts, they would, under New York law, in all likelihood be waived pursuant to ¶ 3(g) of the amended guaranty. Dkt. # 29-5, at 3.

[3] Embedded within his response to plaintiff's motion to dismiss (Dkt. # 19), defendant includes a section wherein he "requests permission to amend the Counterclaim to assert additional claims against Plaintiff for which relief can be granted." Id. at 10. Whether to allow a party leave to amend is within the district court's sound discretion. Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1218 (10th Cir. 1990). Rule 15 of the Federal Rules of Civil Procedure states that a court should freely give leave to amend "when justice so requires." In explaining why the Court should grant him leave to amend, defendant states only that he "omitted pertinent claims in his counterclaim . . . ." Id. at 9. This is an insufficient justification—defendant does not provide a reason why justice requires the Court to grant defendant leave to amend his counterclaim, and the Court sees none. Accordingly, defendant's request for leave to amend is denied.

8

complaint against Metals LLC are identical to those in defendant's counterclaim against plaintiff, and, for the reasons stated above, defendant lacks standing to bring these claims.[4]

Accordingly, plaintiff's motion to strike defendant's third party complaint (Dkt. # 12) is granted.

## IV. Defendant's Motion to Defer Defendant's Response to Plaintiff's Motion for Summary Judgment

On October 17, 2017, plaintiff filed an amended motion for summary judgment (Dkt. # 16), arguing that "there is no genuine dispute regarding the existence of the guaranty; that the guaranty is absolute and unconditional; and that Defendant's obligations are not subject to any defense, set-off, or counterclaim." Id. at 16.

On October 27, 2017, defendant filed a motion to defer his response to plaintiff's motion for summary judgment (motion to defer) (Dkt. #22), requesting "that he not be required to prematurely brief" plaintiff's motion to dismiss, motion to strike, and motion for summary judgment "as the ruling on the Motion to dismiss could substantially alter the Response to the Motion for Summary Judgment." Dkt. # 22, at 2.[5] Defendant states further that "[p]laintiff's motion for summary

---

[4] As plaintiff also argues, even if defendant had standing to assert his third party complaint, it would nevertheless be an improper third party complaint under Rule 14 of the Federal Rules of Civil Procedure. Dkt. # 12, at 4. Rule 14 permits a defendant to implead a "person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." Here, plaintiff seeks a judgment against defendant, but defendant does not allege that Metals LLC is or may be liable to him. Rather, defendant alleges that Metals LLC is liable for actions taken in the course of its joint venture with Julimar. Even assuming defendant had standing to bring his third party complaint, therefore, the Court would strike it under Rule 14 because it fails to allege that Metals LLC is or may be liable to defendant for plaintiff's claim against him.

[5] Plaintiff has not yet responded to this motion. Plaintiff's response is due December 6, 2017. Dkt. # 28.

9

judgment was filed before [defendant] received responses to his discovery requests," and that, consequently, defendant "cannot presently present evidentiary materials supporting fact [sic] that are relevant to his opposition of the pending motion for summary judgment." Id. In addition, defendant's attorney of record, R. Brent Blackstock, states in an affidavit,

> Plaintiff and its affiliate have evidence that should support Defendant's defenses, counterclaims and crossclaims and should corroborate evidence he already has.
>
> Defendant has served and will serve discovery requests on the Plaintiff to obtain the necessary evidence. Defendant presented counsel with the email communications and financial records in his possession. We want to compare his invoices with the invoices and other documents that ICD Metals and subsequently Capital Development supposedly have to support their claims.
>
> Upon receipt of discovery responses from ICD Metals and Capital Development, we can more fully respond to the issues at hand, and show the Court the actual amounts that are involved in the parties' claims.
>
> Additionally, ICD Metals owes Defendant commissions that they never paid. With discovery we can confirm the amount of those commissions and ascertain why ICD Metals chose not to remit them to Defendant. The unpaid amounts constitute an offset to what Defendant allegedly owes, if any amount is owed at all.

Id. at 4.

Federal Rule of Civil Procedure 56(d) provides that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (until December 2010, Rule 56(f)). "The party requesting additional discovery must present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact.'" F.D.I.C. v.

10

Arciero, 741 F.3d 1111, 1116 (10th Cir. 2016) (quoting Trask v, Franco, 446 F.3d 1036, 1042 (10th Cir. 2006)).

Under rule 56(d), defendant fails to justify his opposition to plaintiff's motion for summary judgment. As this order establishes, defendant lacks standing to bring his counterclaim against plaintiff and his third party complaint against Metals LLC. The only claim remaining in this matter, therefore, is plaintiff's claim against defendant for breach of the unconditional amended guaranty. Reviewing defendant's motion to defer and supporting affidavit in light of this, defendant fails to explain how additional time will enable him to rebut plaintiff's argument that there is no genuine dispute regarding defendant's liability to plaintiff under the unconditional amended guaranty.[6]

Accordingly, defendant's motion to defer his response to plaintiff's motion for summary judgment (Dkt. # 22) is denied.

**IT IS THEREFORE ORDERED** that plaintiff's motion to dismiss defendant's counterclaims (Dkt. # 11) is **granted**; plaintiff's motion to strike defendant's third party complaint (Dkt. # 12) is **granted**; and defendant's motion to defer defendant's response to plaintiff's motion for summary judgment (Dkt. # 22) is **denied**.

**IT IS FURTHER ORDERED** that defendant's counterclaim (Dkt. # 8) is **dismissed** and his third party complaint (Dkt. # 9) is **stricken**. Therefore, Thigpen is terminated as a counterclaim plaintiff and third party plaintiff, Capital Development is terminated as a counterclaim defendant, and ICD Metals, LLC is terminated as a party. The remaining parties are advised that the case

---

[6] Moreover, defendant has already had forty-eight days to prepare his response to plaintiff's motion for summary judgment (which was filed on October 17, 2017) because that motion was held in abeyance until the Court, on November 15, 2017, denied defendant's motion to consolidate Dkt. # 17; Dkt. # 28.

11

caption on future pleadings shall revert to reflect the parties as shown on the original complaint (see Dkt. # 1).

**IT IS FURTHER ORDERED** that deadlines are reset and defendant's response to plaintiff's amended motion for summary judgment (Dkt. # 26) is due by **December 26, 2017** and plaintiff's reply is due by **January 9, 2018.**

**DATED** this 4th day of December, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE