UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CAPITAL DEVELOPMENT AFFILIATES, )
LLC, )
          )
    **Plaintiff,** )
          )
v. )    Case No. 17-CV-0426-CVE-FHM
          )
ZELAND BENJAMIN THIGPEN III, )
          )
    **Defendant.** )

## OPINION AND ORDER

Before the Court is plaintiff Capital Development Affiliates, LLC's, amended motion for summary judgment (Dkt. # 16).

### I.

For purposes of summary judgment, the following facts are undisputed: plaintiff is a limited liability company organized and existing under the laws of the State of New York. Dkt. # 16-3, at 1. Defendant Zeland Benjamin Thigpen III is a resident of the State of Oklahoma. Id. Defendant and his wife, Cheryl Thigpen, were the sole members of Julimar Trading, LLC (Julimar), a now defunct company that conducted business "in the international purchase and sale of industrial metallic alloys." Id.; Dkt. # 7, at 4.

In and around 2014, Julimar and ICD Metals, LLC (ICD Metals)—a company affiliated with plaintiff through common ownership—had a business relationship; Julimar identified opportunities for the purchase and resale of metallic alloys, and, as an August 15, 2014 joint venture agreement between Julimar and ICD Metals states, ICD Metals had the "right of first refusal" to finance these opportunities. Id.; Dkt. # 33, at 52. On or about June 26, 2015, Julimar, as security for its existing or thereafter arising indebtedness, executed a security agreement (the agreement) wherein it, inter

alia, granted ICD Metals a security interest in Julimar's right, title, and interest in certain property. Dkt. # 16-3 at 2, 8-16. At some time prior, Julimar became indebted to ICD Metals for outstanding accounts receivable in the amount of $2,933,356. Id. at 2-3.

To evidence its indebtedness to ICD Metals, on or about September 30, 2015, Julimar executed and delivered to ICD Metals a demand note, wherein Julimar acknowledged its obligation to pay ICD Metals the principal sum of $2,933,356 (due and payable on demand) together with interest at the rate of 12% per annum calculated on the basis of a 360 day year (12 months of 30 days each) (interest rate). Id. at 3, 18-22. Under the demand note, Julimar is obligated to make interest payments, with any payment of principal, on the first day of each month beginning October 1, 2015. Id. at 3. In addition, the demand note provides for late payment charges of 5% of any interest or required principal payment made more than ten days after the due date of such payment. Id. And, "upon the stated or accelerated maturity" of the demand note, it bears interest at a per annum rate of 5% in excess of the interest rate until the principal is fully paid. Id.[1] The demand note also provides that, should the indebtedness it represents be collected at law, plaintiff is entitled to all costs of collection, including reasonable attorney fees and expenses. Id. at 20.

Also on or about September 30, 2015, defendant executed and delivered a guaranty to ICD Metals wherein he, inter alia, guaranteed the punctual and full payment of all present and future indebtedness, liabilities, and obligations of Julimar to ICD Metals. Id. at 3-4, 23-27. On or about February 12, 2016, defendant executed and delivered an amended and restated guaranty agreeing to same. Id. at 3-4, 39-53. The amended guaranty contains the following provisions:

---

[1] The nature of a demand note, of course, is that it is "mature and payable immediately on the date of its execution, that is, it is due upon its delivery." 80 N.Y. Jur. 2d Negotiable Instruments, Etc. § 346 (database updated Feb. 2018) (collecting cases).

2. **Guaranty**. Guarantor hereby unconditionally, directly and absolutely guarantees to Lender the payment and performance of Borrower's Obligations. [...]

3. **Nature of Guaranty**. This Guaranty is an absolute, unconditional, continuing, direct and immediate guaranty of payment and not just of collection and is no way conditioned upon or limited by or in any other way affected by:

> (a) any attempt by Lender to pursue Lender's rights against Borrower or any Obligor;
>
> (b) any attempt by Lender to pursue Lender's rights against any of Borrower's real or personal property or any other Obligor's real or personal property;
>
> (c) any recourse against or foreclosure of any security or collateral now or hereafter pledged, assigned or granted to Lender under the provisions of any of the loan documents;
>
> (d) any action taken or not taken by Lender;
>
> (e) the partial or complete unenforceability or invalidity of any other guaranty or surety agreement, pledge, assignment or other security for any of Borrower's Obligations;
>
> (f) the invalidity or unenforceability of any provision of the Loan Documents; or
>
> (g) any defense asserted or claimed by Borrower with respect to Borrower's Obligations including, but not limited to, failure or lack of consideration, breach of warranty, fraud, payment, accord and satisfaction, strict foreclosure, statute of frauds, bankruptcy, insolvency, infancy, incompetency, statute of limitations, lender liability and usury. The obligations of Guarantor under this Guaranty shall not be subject to any counterclaim, recoupment, setoff, reduction, or defense based upon any claim that Guarantor may have against Borrower or Lender, are independent of any other guaranty or guaranties at any time in effect with respect to any of Borrower's Obligations, and may be enforced regardless of the existence of such other guaranty or guaranties.

Id. at 40-41 (emphasis added).

On or about April 1, 2016, ICD Metals assigned all of its right, title, interest, benefit, duty, and obligation in, inter alia, the agreement, demand note, and amended guaranty (the loan documents) to plaintiff. Id. at 4. In a letter to Julimar dated May 3, 2016, plaintiff declared the unpaid principal, interest, default interest, late charges, and other amounts specified in the loan documents to be immediately due and payable. Id. at 4, 60-61. In a letter to defendant also dated May 3, 2016, plaintiff advised defendant of the letter it sent to Julimar and, pursuant to the amended guaranty, demanded payment in full from defendant no later than May 13, 2016. Id. at 45, 64-65. Julimar and defendant, however, failed to pay all amounts due and owing. Id. at 5. By letters dated May 20, 2016, plaintiff advised Julimar and defendant that they failed to make payment of all of the required amounts by May 13, 2016, and that plaintiff reserved all rights arising from Julimar's and defendant's defaults. Id. at 5, 68-71. Consequently, according to plaintiff, there is now due and owing to plaintiff from defendant the principal sum of $2,933,356, together with interest at the rate of 12% per annum from the 1st day of September 2016, along with additional sums for late payment charges, attorney fees, costs, and expenses. Id. at 5.

On November 18, 2016, Julimar, defendant, and defendant's wife filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Oklahoma. Dkt. # 16-4; Dkt. # 16-5. On May 11, 2017, however, defendant's bankruptcy discharge was voluntarily waived pursuant to an order from the bankruptcy court. Dkt. # 16-6.

Plaintiff filed its complaint on July 20, 2017, bringing one claim for breach of contract. Dkt. # 1, at 6. Plaintiff seeks the principal sum of $2,933,356, together with interest at the rate of 12% per annum from the first day of September 2016, along with additional sums for late payment charges, attorney fees, costs, and expenses. Id. at 6-7.

Plaintiff has filed a motion for summary judgment (Dkt. # 16). In response, defendant now claims, in an affidavit submitted in response to plaintiff's motion for summary judgment, that he signed the original and amended guaranties only because ICD Metals promised to continue financing "the transactions within the Joint Venture Agreement," but, "shortly after signing the Promissory Note and Guaranty," ICD Metals "discontinued financing the transactions." Dkt. # 33, at 70. In addition, defendant attaches as an exhibit an email, dated December 26, 2017, and purportedly sent to defendant from Kevin Kirby (an ICD Metals employee in September 2015), wherein Kirby responds, "Yes, I would agree to the statements below . . . ," to defendant stating,

> Hi Kevin,
>
> Please confirm that you agree to the following:
>
> • You were an employee of [ICD Metals] during September 2015, when I signed a guarantee [sic] of the Demand Note between Julimar Trading and [Metals LLC].
>
> • In your opinion, I signed the Guaranty (a) to accommodate [ICD Metals] in its involvement with future lenders, potentially including Brown Brothers Harriman, and (b) in reliance on and to receive continued financing from [ICD Metals].

Id. at 56.[2] Additionally, defendant attaches a June 10, 2015 email from Kirby to him, wherein Kirby discusses ICD Metals financing specific projects to which Julimar was connected, as well as business strategy for "moving forward" on "specific joint venture business" with Julimar. Id. at 57.

---

[2] The Court notes that, on the face of defendant's exhibit, defendant's email to Kirby is time-stamped as having been sent at 11:28 a.m. on December 26, 2017, and Kirby's response to defendant is time-stamped as having been sent at 10:30:27 a.m. on December 26, 2017—i.e. approximately one hour earlier. Id. This inconsistency suggests to the Court that this exhibit may not be authentic.

5

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff argues that, pursuant to New York law,[3] it is entitled to summary judgment because it has demonstrated the existence of the absolute and unconditional amended guaranty, the underlying debt, and defendant's failure to perform, and that defendant cannot establish a triable issue with respect to a defense, as the amended guaranty obligates defendant to payment without recourse to any defenses. Dkt. # 16, at 7-8.

In response, defendant argues that summary judgment is inappropriate because, under Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank, 135 A.D. 2d 102, 524 N.Y.S. 2d 531 (1988), and related cases, New York courts have found absolute and unconditional guaranties to be unenforceable where a lender's "wrongful post-execution conduct triggered the event that accelerates or causes the guarantor's liability." Dkt. # 33, at 8 (quoting Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro, 25 N.Y. 3d 485, 496 (2015)). And, defendant contends, when plaintiff demanded payment, defendant was making interest payments in full, and ICD Metals's alleged failure to keep its promise of continuing to provide financing for joint venture transactions with Julimar caused defendant to be unable to meet his obligation to plaintiff. Dkt. # 33, at 8-9. In addition, defendant argues, there is a triable issue as to whether ICD Metals—by supposedly reneging on its promise to provide Julimar with continued financing—fraudulently induced plaintiff into signing the amended guaranty. Id. at 9. Defendant also argues that there is a fact question as to whether the amended guaranty was supported by valid consideration, and that, even if the guaranty is enforceable, he "has the right to determine a set-off against the underlying

---

[3] The amended guaranty provides that it shall be governed by, construed, and interpreted in accordance with the laws of the state of New York. Dkt. # 16-3, at 49.

7

Note based on the commissions he is still owed and the promise of consideration from Metals, LLC." Id. at 2, 13.

In reply, plaintiff contends that defendant's reliance on Canterbury is misplaced, as that court held that there was a triable issue as to whether an unconditional guaranty was enforceable where a lender's potentially wrongful conduct caused the acceleration of a debt whereas, here, plaintiff is not accelerating a debt, but merely seeking to enforce an unconditional guaranty and the demand note it secures. Dkt. # 34, at 1-4. Plaintiff also argues that the amended guaranty's plain language prohibits defendant from raising a fraud in the inducement defense, and that, even if it did not, defendant fails to provide sufficient evidence of fraud. Id. at 4-6.[4] Finally, plaintiff argues that there was ample consideration to support the amended guaranty; as it states on the first page, its purpose was to induce ICD Metals to "continue to extend the [l]oan" to defendant—i.e. forbear from collecting on the $2,933,356 defendant owed ICD Metals under the demand note. Dkt. # 34, at 1-9.[5]

In New York, to meet its prima facie burden on summary judgment, a party seeking to enforce a guaranty must prove "the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty." Cooperatieve Centrale, 25 N.Y.3d at 492 (internal quotation omitted). Thereafter, "the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense." Id. Plaintiff

---

[4] In addition, plaintiff contends that, even assuming defendant did provided sufficient evidence of fraud, he ratified any alleged fraud because he signed the amended guaranty after Metals LLC allegedly reneged on its promise to provide continued financing to Julimar. Id.

[5] Plaintiff does not address defendant's contention that, if the Court finds that the amended guaranty is enforceable, he has the right to determine a setoff against the demand note. But the amended guaranty plainly states that it is not subject to any setoff. See page 3, supra.

has presented competent evidence establishing the existence of the amended guaranty, the underlying debt, and defendant's failure to perform under the guaranty (and defendant does not dispute any of this). Accordingly, plaintiff has met its prima facie burden, and the burden shifts to defendant to establish a triable issue with respect to a bona fide defense.

Defendant's first argument is that, under Canterbury, there is a triable issue as to whether the amended guaranty is enforceable. But plaintiff is right—defendant's reliance on Canterbury is misplaced. In that case, plaintiff corporation, Canterbury, obtained a revolving line of credit from defendant bank. 135 A.D. 2d at 104. In doing so, certain corporate officers of plaintiff signed instruments that "irrevocably and unconditionally guarantee[d] payment when due, whether by acceleration or otherwise, of any and all liabilities of [Canterbury] to the bank." Id. Crucially, the guaranty agreement permitted the bank to accelerate the debt only upon the happening of various events, including an adverse change in Canterbury's financial condition. Id. After initially consenting to an increase in Canterbury's credit line, the bank informed Canterbury that it would no longer honor its checks drawn against its credit line and would retain Canterbury's account receivables. Id. at 105. Shortly thereafter, Canterbury became unable to meet its costs and ceased operating, and the bank accelerated the debt and sought to enforce the guaranty. Id. The court, however, affirmed the lower court's denial of the bank's motion for summary judgment, holding that there was a triable issue as to whether the bank's refusal to honor Canterbury's checks "affected the existence of a necessary condition precedent [i.e. an adverse change in Canterbury's financial condition] to acceleration of liability under the express terms of the guaranty." Id. at 108. Thus, as the New York Court of Appeals stated recently, "Canterbury stands for the proposition that an absolute and unconditional guaranty does not foreclose a guarantor's challenge that the creditor's

9

wrongful post-execution conduct triggered the event that accelerates or causes the guarantor's liability." Cooperatieve Centrale, 25 N.Y.3d at 496.

In the instant matter, however, unlike in Canterbury, the amended guaranty is securing an instrument—i.e. the demand note—that lists no conditions precedent to acceleration. Indeed, it is a categorical mistake to even discuss acceleration in relation to a demand note because a demand note cannot be accelerated; it is, by nature,"mature and payable immediately on the date of its execution . . ." 80 N.Y. Jur. 2d Negotiable Instruments, Etc. § 346 (database updated Feb. 2018) (collecting cases). Moreover, ICD Metals's alleged breaking of its promise to provide financing to Julimar did not cause Julimar's or defendant's liability—when defendant signed the amended guaranty, Julimar was already indebted to ICD Metals for the amount at issue. Accordingly, because ICD Metals's conduct neither triggered an event that accelerated or caused Julimar's or defendant's liability, Canterbury and its progeny are inapposite.

Defendant argues next that there is a triable issue as to whether ICD Metals fraudulently induced defendant into signing, and thereby vitiated, the amended guaranty. This argument also fails. As an initial matter, the amended guaranty states plainly that it is no way conditioned upon or limited by or in any other way affected by any defense asserted by defendant, including fraud. Dkt. # 16-3, at 41. It is true that, in some circumstances, New York courts have held that general merger clauses or boilerplate disclaimers may be ineffective to exclude parol evidence of fraud in the inducement, particularly where a lender is much more sophisticated than a guarantor. See Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 94 (1985) (discussing cases). But this case does not fall into the narrow exception Citibank contemplates. Defendant is a sophisticated businessman who was engaged in the highly lucrative international trade of metallic alloys. And the amended

guaranty's waiver of defenses provision is neither a general merger clause nor a boilerplate disclaimer; it is an explicit and specific enumeration of certain rights defendant waived in choosing to execute the amended guaranty. Accordingly, the Court finds that, pursuant to the amended guaranty's plain language, defendant is prohibited from raising a fraud in the inducement defense. See Citibank, 66. N.Y.2d at 95 (". . . the substance of defendants' guaranty forecloses their reliance on the claim that they were fraudulently induced to sign it . . . . To permit that would in effect condone defendants' own fraud in 'deliberately misrepresenting [their] true intention' when putting their signatures to their 'absolute and unconditional' guarantee.") (quoting Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 323 (1959)).

Moreover, even assuming, arguendo, that the amended guaranty did not prohibit defendant from raising a fraud in the inducement defense, defendant's argument that there is a triable issue as to whether ICD Metals fraudulently induced him into signing it would still fail, as defendant does not present sufficient parol evidence of fraud. In an affidavit he submitted in response to plaintiff's motion for summary judgment, defendant claims that he "only agreed to accept personal liability on the Promissory Note and Guaranty because of and in absolute reliance on ICD Metals's promise to continue financing the transactions within the Joint Venture Agreement." Dkt. # 33, at 70. And defendant attempts to corroborate this statement with the email purportedly sent to him from Kirby. Id. at 56. But neither the joint venture agreement, nor any other evidence in the record, indicates that ICD Metals ever agreed to provide continued financing to Julimar. Indeed, the joint venture agreement states only, and quite clearly, that ICD Metals had the right of first refusal to finance opportunities that Julimar presented. Dkt. # 33, at 52. In addition, the Court does not consider the Kirby email as part of the summary judgment record because Kirby's statement is excludable

11

hearsay under Fed. R. Evid. 802 (and defendant provides no explanation as to its admissibility), and, under Fed. R. Evid. 901, defendant has not produced evidence sufficient to support a finding that the email was, in fact, authentic and sent from Kirby to defendant. Defendant did not submit a statement from Kirby, in a deposition or affidavit, authenticating the email, and, on the face of the exhibit, Kirby's response is inexplicably time-stamped as having been sent an hour <u>before</u> defendant's initial message. Defendant's only evidence of fraud, therefore, is his own, uncorroborated allegation in an affidavit, and "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings . . . ." <u>Ellis v. J.R.'s Country Stores, Inc.</u>, 779 F.3d 1184, 1201 (10th Cir. 2015); <u>see</u> <u>also</u> <u>Garrett v. Hewlett-Packard Co.</u>, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider conclusory and self-serving affidavits."). Accordingly, even if the amended guaranty did not prohibit defendant from raising a fraud in the inducement defense, no reasonable jury could conclude, based on the record evidence, that ICD Metals fraudulently induced him into signing it.

Finally, defendant's argument that the amended guaranty was not supported by valid consideration is without merit. "As to consideration . . . it consists of either a benefit to the promisor or a detriment to the promisee." <u>Weiner v. McGraw-Hill, Inc.</u>, 57 NY.2D 458, 464 (1982). In signing the amended guaranty, defendant, to his detriment, promised to personally guarantee Julimar's debt and, in consideration for this promise—as the amended guaranty states clearly—received the benefit of ICD Metals "continu[ing] to extend" the $2,933,356 loan to Julimar. Dkt. # 16-3, at 39. And, from ICD Metals's perspective, it promised, to its detriment, to continue to extend the loan to Julimar (<u>i.e.</u> not demand immediate payment), and, in consideration for this promise, received the benefit of

defendant personally guaranteeing Julimar's debt. The amended guaranty, therefore, was supported by valid consideration.

Accordingly, because plaintiff has proven the existence of the amended guaranty, the underlying debt and defendant's failure to perform under the amended guaranty, and defendant has not raised a triable issue with respect to a bona fide defense, plaintiff is entitled to summary judgment on its claim for breach of contract. And defendant is not entitled to a setoff against the demand note because the amended guaranty plainly states that it shall not be subject to any setoff. Dkt. # 16-3, at 41 (see note 5, supra).

**IT IS THEREFORE ORDERED** that plaintiff Capital Development Affiliates, LLC's motion for summary judgment (Dkt. # 16) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff shall submit to the CM/ECF Intake Box by close of business on **March 29, 2018**, a proposed judgment, approved as to form only by counsel for defendant, for the principal sum of $2,933,356, plus the amount of pre-judgment interest due as of March 30, 2018, plus specified amounts of late payment charges, plus post-judgment interest from March 30, 2018 until paid (the rate of which will be inserted by the Court).

**IT IS FURTHER ORDERED** that all deadlines, including the March 28, 2018 motion hearing before Magistrate Judge McCarthy, the April 19, 2018 settlement conference with Adjunct Settlement Judge DeMuro, the June 1, 2018 pretrial conference, and the June 18, 2018 jury trial, are **stricken.**

**IT IS FURTHER ORDERED** that any bill of costs or motion for attorney fees will be due after entry of judgment.

**DATED** this 21st day of March, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE